Law Offices Of:
HARRISON & MATSUOKA

WILLIAM A. HARRISON    #2948
841 Bishop Street, Suite 800
Davies Pacific Center
Honolulu, Hawaii  96813
Telephone Number:  523-7041
Facsimile Number:  538-7579
E-Mail:  wharrison@hamlaw.net

Attorney for Defendant
YOUNG EUN CHUNG


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 04-0036SOM |
| | ) | |
| Plaintiff, | ) | DEFENDANT YOUNG EUN |
| | ) | CHUNG'S MOTION FOR |
| vs. | ) | DOWNWARD DEPARTURE |
| | ) | |
| YOUNG EUN CHUNG | ) | Sentencing Date:  February 12, |
| | ) | 2007 |
| Defendant. | ) | Time:  1:30 p.m. |
| | ) | Judge:  The Honorable |
| | ) |        Susan Oki Mollway |
| | ) | |
| | ) | |
| _____ | ) | |


DEFENDANT YOUNG EUN CHUNG'S MOTION FOR DOWNWARD DEPARTURE

**I.   STATEMENT OF FACTS:**

Defendant YOUNG EUN CHUNG is 34-years old resident alien who lives with her parents.  Since 2002 she has been working for her parents as a sales

clerk at the parent's former retail liquor store. She worked at the store essentially for room and board. She was not paid.

Prior to the instant case, YOUNG EUN CHUNG had never been involved in any criminal activity.

II. **ARGUMENT:**

A. <u>YOUNG EUN CHUNG'S ACTIONS CONSTITUTE ABERRANT BEHAVIOR.</u>

The United States Sentencing Guidelines refer to "single acts of aberrant behavior," but neither defines that phrase nor provides any insight into what he Commission might have meant when it used the phrase. The Ninth Circuit has recognized that consistently with the statutory mission and purpose of the Sentencing Guidelines, a first offense may constitute a single act of truly aberrant behavior justifying a downward departure to probation, even at higher offense levels. <u>United States v. Dickey</u>, 942 F.2d. 836 (9th Cir. 1992), <u>cert. denied</u>, 112 S. Ct. 383 (1991). A determination of aberrant behavior must be based on a "convergence of factors." <u>Id.</u> at 668. Factors have included: (1) the singular nature of the criminal act, (2) spontaneity and lack of planning, (3) the defendant's criminal record, (4) psychological disorders the defendant was suffering from, (5) extreme pressures under which the defendant was operating . . ., (6) letters from friends and family expressing shock at the defendant's behavior, and (7) the defendant's motivations for committing the crime. <u>United States v. Colace</u>, 126 F.3d 1229, 1231 n. 2 (9th Cir. 1997).

The instant matter is not a case in which YOUNG EUN CHUNG is attempting to rely upon the claim of "aberrant behavior" simply because this time she got caught. YOUNG EUN CHUNG has never before been involved in any illegal activity. This is not a case where a defendant commits an offense to support an illegal drug habit. Moreover, this is not a case in which the defendant, after a series of ever-escalating arrests, finally got caught. In this case, YOUNG EUN CHUNG' S behavior was actually aberrant.

B.  STATUS AS A DEPORTABLE ALIEN.

(1) A sentence of incarceration may subject defendant to deportation.

A "sentence" is specifically defined at 8 U.S.C. § 1101(a)(48)(B), INA §101(a)(48)(B). Both the applicability of many crime-related grounds of inadmissibility or deportability that depend on a conviction, and, a defendant's eligibility for some form of relief from removal, may turn on the particular language in the statute relating to the length of a sentence that is actually imposed, that may be imposed, or that was or will be served.

It is the actual sentence to incarceration or confinement imposed by the court –*regardless of the time suspended* – that counts for immigration purposes. Probation does not constitute a period of incarceration or confinement. However, any jail time imposed as a condition of probation does constitute a sentence.

(2) A sentence of incarceration will require harsher incarceration.

The Bureau of Prisons ("BOP") defines a deportable alien as an offender who is a citizen of a foreign country, rather than the United States. See BOP Program Statement 5100.06. The Bureau has determined that a prisoner's "deportable alien" status is a Public Safety Factor requiring increased safety measures to insure the protection of society. A deportable alien is therefore ineligible for incarceration at a minimum security facility or community confinement, which can be up to 10% of the sentence but no more than six months. Classification as a deportable alien is a Public Safety Factor unless a defendant can meet the following conditions: (1) history of stable employment in the United States for at least three years prior to incarceration; (2) verified history of domicile with the United States for at least five years; and (3) strong family ties in the United States to include only immediate family. Id. Based upon this definition, it is clear that YOUNG EUN CHUNG, who is a citizen of Korea, would be labeled by the BOP as a deportable alien during her term of incarceration. Accordingly, YOUNG EUN CHUNG, as a deportable alien, would not qualify for minimum security facility or community corrections; a classification which would otherwise result from this nonviolent, low-guideline offense.

The Ninth Circuit in United States v. Charry Cubillos, 91 F.3d 1342 (9th Cir. 1996), examined the issue of whether the increased sentence severity resulting from deportable alien status is an appropriate basis for departure. In Cubillos, the district court departed downward three levels based on the more severe sentence it believed Cubillos would serve for a substantial part of her

sentence and her ineligibility for community placement at the end of her sentence. Id. at 1345. The Ninth Circuit, however, vacated the sentence and remanded for the district court to make sufficient findings as to the basis for its departure. Id. On remand, the Ninth Circuit instructed the district court to consider the structure and theory of both relevant individual guidelines and the guidelines taken as a whole to decide whether this factor is sufficient to take the case out of the Guideline's heartland. Id. Additionally, the Ninth Circuit held that the district court must make an assessment of the many facts bearing on the outcome. Id. It is important to note, however, that by the nature of the remand order, the Ninth Circuit did not reject this ground as a basis for departure.

This issue was revisited and clarified by the Ninth Circuit in United States v. Davoudi, 172 F.3d 1130 (9th Cir. 1999). In Davoudi, the Ninth Circuit recognized a defendant's status as a deportable alien as a valid ground for downward departure. The Ninth Circuit held that it had no authority to review the district court's discretionary decision refusing to depart from the Sentencing Guidelines where the district court did not indicate any belief that it lacked legal discretion to depart downward in sentencing based on defendant's status as a deportable alien. The Ninth Circuit quoted Cubillos when it stated:

> Davoudi correctly notes that the district court had the legal discretion to depart downward because deportable aliens may be unable to take advantage of the up to six months of home confinement authorized by 18 U.S.C. §3624(c).

Davoudi, 172 F.3d at 1133-34.

In Davoudi the Ninth Circuit held that it could review the district court's refusal to depart from the Sentencing Guidelines only if the district court indicated that it believed that it did not have discretion to depart from the guidelines. However, the Ninth Circuit noted that it could not review the district court's determination in Davoudi's case because the district court complied with both Koon and Cubillos when it repeatedly asked defense counsel how Davoudi's status as a deportable alien brought his case "out of the heartland of cases." Id. at 1134. The Ninth Circuit refused to review the district court's refusal to downwardly depart because the Ninth Circuit felt satisfied that the district court adequately recognized and considered Davoudi's status as a deportable alien in its departure decision. Although the facts of Davoudi were insufficient to bring the case out of the guideline's "heartland," it is now clear that the Ninth Circuit recognizes that an offender's status as a deportable alien is a valid basis for departure from the Sentencing Guidelines.

The Ninth Circuit employs a test articulated in United States v. Smith, 27 F.3d 649 (D.C. Cir. 1994), for determining when a departure is proper based on increased sentence severity resulting from deportable alien status. Cubillos, 91 F.3d at 1343. This test states:

> For a departure based on defendant's status as a deportable alien to be reasonable, the difference in severity must be substantial and the sentencing court must have a high degree of confidence that it will apply for a substantial portion of the defendant's sentence . . . . [E]ven a court confident that the status will lead to worse conditions should depart only when persuaded that the greater severity is undeserved.

6

Smith, 27 F.3d at 655.

The facts of YOUNG EUN CHUNG'S case indicate that his status as a deportable alien will substantially affect the severity of her incarceration. Since YOUNG EUN CHUNG has no prior criminal history who did not commit a violent crime, it is possible that she could have been housed at a low security prison and/ or qualify for community confinement. However, her status as a deportable alien will preclude such low-security incarceration and/ or community confinement status. Her status as a deportable alien will also make YOUNG EUN CHUNG ineligible for early pre-release into the community for the last 10% of her sentence, as established under 18 U.S.C §3264(c). This factor substantially affects YOUNG EUN CHUNG'S period of incarceration.

### III.  CONCLUSION:

Based on the arguments and authorities cited herein, Defendant YOUNG EUN CHUNG respectfully requests that this Court grants her Motion to Depart for the reasons stated.

DATED:  Honolulu, Hawaii, December 19, 2006.

Law Offices Of:
HARRISON & MATSUOKA

_/s/ William A. Harrison_____
WILLIAM A. HARRISON
Attorney for Defendant
YOUNG EUN CHUNG